**Opinion issued July 21, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-24-00589-CR**

———————————

**TERRELLE DESHUN STATEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1838312**

---

**MEMORANDUM OPINION**

A jury convicted Terrelle Deshun Staten of the offense of assault on a family

member with a prior conviction and assessed his punishment at eight years'

confinement.[1] In his sole issue on appeal, Staten argues that the trial court erred by allowing the State to introduce extraneous offense evidence through a 911 call recording. As part of this issue, Staten also argues that the court erred by denying his motion for mistrial made after a portion of the recording was played for the jury. We affirm.

## Background

Shortly after Staten and Jessenia Medina began a relationship, he moved into her apartment. Their relationship was occasionally tumultuous. Staten's drinking habits concerned Medina, and she asked him to leave her apartment multiple times. She allowed him to return when he said he did not have anywhere else to live. Staten, in turn, believed that Medina was seeing other men.

Medina was asleep during the early morning hours of October 3, 2023, when she was suddenly awakened by Staten on top of her, grabbing her on her neck and hitting her with his fist. During the ensuing scuffle, Staten accused Medina of "entertaining another man." Staten repeatedly hit Medina on her face, but she was able to push him off her. She grabbed her phone and fled the apartment in her nightgown. Medina tried to call 911, but she ended up calling the last person she had spoken with: her sister. Staten caught up with Medina outside and pushed her to the

---

[1]     *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(A) (offense is third-degree felony if committed against member of defendant's household and defendant has been previously convicted of assault against member of defendant's household).

ground. He smashed her phone on the concrete, breaking it. He then walked back to Medina's apartment.

A passing security guard quickly assisted Medina. The security guard called 911, as did Medina's downstairs neighbor and Medina's sister. The 911 call by Medina's sister is the focus of Staten's appellate issue. When the State offered the recording of this call, defense counsel objected solely based on hearsay. The trial court overruled the objection, admitted the recording, and allowed the State to publish the recording to the jury. During the publication of the call, the trial court sua sponte ordered that the recording be stopped and that the parties approach the bench. The parties agree that the recording contained statements by Medina's sister that Staten has "mental health problems" and that he had been previously convicted of assaulting his ex-wife.[2]

The parties and the trial court had a lengthy discussion about how to handle the exhibit. Defense counsel indicated that he had listened to the recording before trial. The defense made additional objections to the exhibit during the bench conference, including Rule 403 and due process. Counsel also moved for a mistrial.

---

[2] During the discussion about this exhibit, the parties and trial court disputed how much of the recording the jury had heard. The court believed it had ordered the recording stopped as soon it heard the word "prior," so it was unclear whether the jury heard the statement about the prior conviction. The court reporter did not transcribe the recording as it was being played, so the appellate record does not indicate what statements the jury heard.

Ultimately, the trial court denied the motion for mistrial, withdrew admission of the exhibit, and instructed the jury to disregard what it heard on the audio of the exhibit.

The jury found Staten guilty of the charged offense and assessed his punishment at eight years' confinement. This appeal followed.

### Admission of 911 Recording

In his sole appellate issue, Staten contends that the trial court erred by allowing the State, through the 911 call made by Medina's sister, to introduce evidence of extraneous bad acts in violation of Rules of Evidence 401, 403, and 404(b).

In advancing this position, Staten argues that he "objected, at length and in detail, when the exhibit was offered." The record, however, demonstrates otherwise. Medina's sister testified that she called 911 "because [she] received a phone call from [Medina], and she didn't speak. All she was doing was screaming . . . ." After Medina's sister authenticated the audio recording, the State offered the exhibit. Defense counsel objected, but on limited grounds:

| | |
|---|---|
| Ms. Barnhart: | State offers State's 11, tendering to Defense. |
| Mr. Garcia: | Judge, Defense is going to object on hearsay grounds. |
| The Court: | That objection is overruled. State's Exhibit No.— |
| Ms. Barnhart: | 11, Judge. |
| The Court: | —No. 11 will be admitted. And you may publish. |
| Ms. Barnhart: | Publishing State's 11. |

4

(Exhibit Published)

The Court:        Hold on. Can you stop that?

Ms. Barnhart:     Yes, Judge.

The Court:        Can you approach?

Ms. Barnhart:     Yes, ma'am.

As this excerpt indicates, the recording of the 911 call played for some unidentified amount of time, at which point the trial court asked the State to stop the recording and ordered the parties to approach. Then the parties and the court discussed the statements made by Medina's sister concerning Staten's mental health and his prior conviction for assaulting his ex-wife. That is when the defense raised additional objections to the 911 call that the jury had already partially heard, based on Rule 403 and due process.

At the time the State offered the 911 call, the defense's only objection was to hearsay. Despite later indicating that counsel had listened to the 911 call,[3] the

---

[3] Immediately after making this statement, the defense stated that "in the Motion in Limine [it] was decided that at any point we would approach regarding that issue," presumably referring to admission of extraneous offenses. To the extent Staten argues that admission of the 911 call was improper because the State violated a motion in limine by not asking to approach the bench before introducing the 911 call, we first note that motions in limine do not preserve any error with respect to the subject of the limine ruling. *See Parker v. State*, 727 S.W.3d 38, 73 (Tex. Crim. App. 2025) ("A motion in limine, however, is a preliminary matter and normally preserves nothing for appellate review. For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." (quotation omitted)). We also note that when the State offered the 911 call, the defense did not insist that the parties approach the bench to discuss

5

defense did not object to the 911 call based on any of the grounds Staten advances on appeal for why the call was inadmissible: relevancy, Rule 403, or Rule 404(b). *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error."); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004) (when appellate complaint is admission or exclusion of evidence, defendant "must have made a proper and specific objection at the time the evidence was offered or excluded to preserve his right of review of that evidentiary claim"). The defense made additional objections after the 911 call's publication.

With hearsay being the only timely objection that the trial court heard, the court cannot be faulted based on other evidentiary rules, such as those relating to extraneous acts. In other words, Staten's appellate complaint about extraneous acts does not comport with his trial objection, so he failed to preserve his complaint about admission of the 911 call. *See Clark*, 365 S.W.3d at 339 ("The point of error on appeal must comport with the objection made at trial.").

As part of his appellate issue, Staten also argues that the trial court "should have granted the mistrial as requested by Appellant and allowed a new trial where

the mention of an extraneous offense in this exhibit. Instead, the defense objected only based on hearsay.

6

no such conformity evidence was heard by a jury." We therefore turn to whether the trial court erred by not ordering a mistrial.

"A mistrial is an appropriate remedy in extreme cases for a narrow class of highly prejudicial and incurable errors." *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). In doing so, we balance three factors: (1) the severity of the misconduct, or the magnitude of the prejudicial effect; (2) the curative measures adopted, including the efficacy of any cautionary instruction by the trial court; and (3) the certainty of conviction absent the misconduct, which evaluates the strength of the evidence supporting the conviction. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). In this case, the balance of all three factors weighs in favor of concluding the trial court did not abuse its discretion.

First, the severity or magnitude of the problem is unclear because of uncertainty in the appellate record about precisely how much of the 911 call the jury heard. Although all parties agreed that the 911 call contains a statement that Staten had a prior conviction for assaulting his ex-wife, nobody was sure what the jury heard before the court ordered the recording stopped. One of Staten's lawyers and apparently the court itself believed that the court quickly ordered the recording stopped as soon as the court heard the word "prior," and therefore the jury did not

7

hear about an assault conviction. Another one of Staten's lawyers believed that he *did* hear something "about beating up an ex-wife," but "it all happened so fast" that it was "very difficult to be able to say it with certainty." Medina's sister was also, apparently, "speaking very quickly" on the audio recording. Additionally, as the State points out, at this point in the trial, the jury was already aware that Staten had a prior conviction for assaulting a family member because that was a jurisdictional element required to elevate the offense from a misdemeanor to a felony, and the fact of a prior conviction was discussed during voir dire and mentioned when the State arraigned Staten by reading the indictment. A prior domestic violence conviction was therefore not new information to the jury.[4]

Second, and more significantly, the trial court took prompt curative measures. After the bench conference concerning the 911 call, the court ordered the exhibit withdrawn and instructed the jury to "please disregard what you heard on the audio from State's Exhibit No. 11." The jury charge also included a limiting instruction restricting the purposes for which the jury could consider any extraneous offense evidence. "Instructions to the jury are generally considered sufficient to cure

---

[4]     We note that the witness who testified after Medina's sister (and therefore after the trial court ruled on Staten's motion for mistrial) was a Harris County Sheriff's Office deputy who compared Staten's known fingerprint to the fingerprint on the judgment and sentence from his prior assault conviction. Admitted along with the judgment was the indictment for that offense, which revealed that the complainant for that offense was a man and was not Staten's ex-wife.

improprieties that occur during trial." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see McDonnell v. State*, 674 S.W.3d 694, 700 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." (quotation omitted)). We "generally presume that a jury will follow the judge's instructions," and the appellate record contains nothing to rebut that presumption in this case. *See Gamboa*, 296 S.W.3d at 580.

Finally, the evidence supporting the conviction was substantial. Medina testified that she woke up to Staten, who lived with her and had been in a relationship with her for months, on top of her, grabbing her neck and hitting her. After a struggle, she managed to flee her apartment and run outside, where Staten caught up to her, pushed her to the ground, and smashed her phone on the concrete, breaking it. The confrontation between Staten and Medina was loud enough that it woke Medina's downstairs neighbor, who could hear Medina screaming and could tell that it "was getting hard for her to breath[e]." This neighbor, concerned for Medina's safety, called 911, as did Medina's sister and a security guard who happened upon Medina in the parking lot after the confrontation with Staten ended. When police officers responded minutes later, they saw Medina with bloodied scrapes on her knees, right hand, and elbow, redness to her face and neck, and a busted lip. They also found Medina's phone in pieces on the concrete and Staten in Medina's apartment.

When balancing these factors, we conclude that admission of the 911 call does not fall into the category of "highly prejudicial and incurable errors" justifying a mistrial, and therefore the trial court did not abuse its discretion by denying Staten's motion for mistrial. *See Turner*, 570 S.W.3d at 268.

We overrule Staten's sole appellate issue.

## Conclusion

We affirm the judgment of the trial court.


David Gunn
Justice

Panel consists of Justices Gunn, Caughey, and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).